IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLY E. BURKE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 10-1317 |
| v. | ) Judge Cathy Bissoon |
| | ) |
| GAPCO ENERGY LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM ORDER**

For the reasons stated below, the motion for summary judgment filed by Defendant Sylvan Energy, LLC ("Sylvan") (Doc. 48) will be denied. Additionally, the motion for summary judgment field by Defendant EQT Production Company ("EQT") (Doc. 52) also will be denied.

Billy E. Burke, Bonnie I. Burke, and Chris E. Burke ("Plaintiffs") bring the instant lawsuit against Defendants for breach of contract, trespass, and to quiet title to a parcel of land located in Greene County, Pennsylvania. Plaintiffs seek injunctive and declaratory relief, as well as money damages. This cause of action initially was filed in the Court of Common Pleas of Washington County, Pennsylvania, on October 1, 2010. (Doc. 1-1 at 1). It was removed to this Court, and assigned to the Honorable David S. Cercone, on October 7, 2010.[1] (Doc. 1). Plaintiffs filed a motion for a temporary restraining order on October 14, 2010 (Doc. 3), which was granted by Judge Cercone on October 21, 2010, after a hearing held the preceding day. (Docs. 8 and 9). A hearing on a preliminary injunction was held on November 4, 2010 (Doc.

---

[1] This case was reassigned to the undersigned on October 26, 2011. (Doc. 70).

15), after which a preliminary injunction was issued in favor of Plaintiffs, and the temporary restraining order was dissolved. (Docs. 15 and 16).

Plaintiffs filed an amended complaint on December 20, 2010. (Doc. 22). Defendant Sylvan moved for summary judgment on Plaintiffs' claims against it on July 26, 2011. (Doc. 48). Defendant EQT moved for summary judgment on the following day, relying substantially on the same arguments and evidence put forth by Defendant Sylvan. (Docs. 51-53). The issue of whether Defendants are entitled to summary judgment with respect to Plaintiffs' claims is ripe for disposition.

A. Material Facts

Plaintiffs are the owners of a 136-acre plot of land located in Greene County, Pennsylvania. (Doc. 22-1). On November 6, 2007, Plaintiffs granted a lease to Defendant Sylvan to the oil and gas rights of said property.[2] (Doc. 53 ¶ 1); (Doc. 62 ¶ 1). On April 8, 2010, Defendant Sylvan assigned its "deep oil and gas rights" under the lease to Defendant EQT. (Doc. 53 ¶ 2); (Doc. 62 ¶ 2); (Doc. 22-3). The lease has a primary term of three years from the date of signing, which is extended "as long thereafter as oil or gas is produced, or considered produced under the terms of this lease, in paying quantities from the premises or from lands pooled therewith, or this lease is maintained in forced under any subsequent provision hereof." (Doc. 6-2 ¶ 2). It is further stated in the lease that:

---

[2] The only named lessee in this document is GAPCO Energy, LLC. See (Doc. 6-2 at 1). Plaintiff characterizes Defendant Sylvan as having been assigned at some point all of GAPCO's interest in the lease. See (Doc. 64 at 2). Defendant Sylvan submits evidence that on October 9, 2007 – well prior to the signing of the lease – that GAPCO changed its name to Sylvan. (Doc. 1-2).

2

> [i]f, at the expiration of the primary term, oil or gas is not being
> produced in paying quantities from the premises, or lands pooled
> therewith, but Lessee is then engaged in operations thereon, this
> lease shall remain in force so long as operations are prosecuted
> (whether on the same or different wells) with no cessation of more
> than ninety (90) consecutive days, and if they result in production,
> so long thereafter as oil or gas is produced in paying quantities
> from the premises or lands pooled therewith. The term
> "operations" as used in this lease shall include but not be limited to
> the drilling, testing, completing, (including by horizontal and slant
> hole well completion techniques) reworking, recompleting,
> deepening, plugging back, or repairing of a well (and all work
> preparatory, incident or related to any such operation) in search for
> or in an endeavor to obtain, restore, maintain, or to increase
> production of oil, liquid hydrocarbons, or gas, or any of them.

Id. ¶ 12.

The crux of Defendants' arguments is that the work that they performed on Plaintiffs' property "clearing access roads, beginning tree removal between the Burke-2 and Burke-3 Wells, stacking trees along the roadway for the damages claim evaluation, and clearing, leveling and developing the well pad of the Burke-3 Well" on November 5, 2010, qualified as "operations preparatory, incident, and related to drilling for oil and gas" under Paragraph 12 of the lease, thus extending the primary term.[3] See (Doc. 49 at 4-5, 11); (Doc. 52 at 5-6, 13). Defendants also rely on the surveys that were performed of the property, the preparation of erosion and sediment control plans for various well sites, environmental surveys, and the preparation and filing of

---

[3] Defendant EQT states in its memorandum that clearing, developing, and leveling took place at the site of the Burke-2 Well, not Burke-3. (Doc. 52 at 5-6). In support of this, they cite to Paragraph 20 of their concise statement of material facts, which relates to a $25,000 payment made by Defendant Sylvan to Plaintiffs, pursuant to Paragraph 20 of the lease, and has little to do with work performed by Defendant Sylvan on the Burke property on November 5, 2010. (Doc. 53 ¶ 20). Paragraph 22 of Defendant EQT's statement does mention some of the work allegedly performed on that date, but is silent as to whether any well pad was cleared, leveled, or otherwise developed.

3

drilling permit applications with the Pennsylvania Department of Environmental Protection ("DEP"), between March 9, 2009, and August 13, 2010, as satisfying this provision of the lease. (Doc. 49 at 9-10); (Doc. 52 at 10-11). Similarly, they cite to notices that were sent regarding application for drilling permits from the DEP on October 12, 2010, and an additional erosion and sediment control plan prepared on November 4, 2010, as further indication that Defendant Sylvan had engaged in the "operations" necessary to extend the term of the lease. (Doc. 49 at 10-11); (Doc. 52 at 12).

Plaintiffs respond that none of these acts is explicitly listed in Paragraph 12 of the lease as "operations" that would extend the primary lease term and, as such, the lease is ambiguous with respect to them. (Doc. 64 at 9-10); (Doc. 65 at 9-10). It is Plaintiffs' position that, when read in the context of the entire document, the term "operations" requires, at the very least, that "drilling operations" have occurred on the leasehold premises. (Doc. 64 at 10); (Doc. 65 at 10). Plaintiffs further argue that Defendant Sylvan has acquiesced to this interpretation of the lease. (Doc. 64 at 10-11); (Doc. 65 at 10-11). They also suggest that Defendant Sylvan was not in possession of a permit from the DEP on November 6, 2010, and thus could not have begun lawfully drilling operations. (Doc. 64 at 9); (Doc. 65 at 9). Finally, Plaintiffs dispute that Defendant Sylvan did anything more as of November 6, 2010, than drive a bulldozer over their property, cursorily move some dirt and knocking down a few shrubs and trees, and set up a stick marking the site of a proposed well. (Doc. 64 at 7); (Doc. 65 at 7).

B. <u>Analysis</u>

In Pennsylvania, oil and gas leases are governed by principles of contract law. <u>Willison v. Consol. Coal Co.</u>, 637 A.2d 979, 982 (Pa. 1994). The "fundamental rule of contract

4

interpretation is to ascertain the intent of the contracting parties." Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 481 (Pa. 2006). Where the contract is written, the intent of the parties is determined by examining the writing itself. Id. The agreement must be interpreted as a whole, and words must be given their ordinary meaning. Pines Plaza Bowling, Inc. v. Rossview, Inc., 145 A.2d 672, 676 (Pa. 1958).

"A contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations." Hullett v. Towers, Perrin, Forster & Crosby, 38 F.3d 107, 111 (3d Cir. 1994) (citation omitted). Where a contract can be read only one way, and thus is not ambiguous, a court may construe its meaning as a matter of law; otherwise, the interpretation is left to the factfinder. Id. (citations omitted).

The language of Paragraph 12 of the lease is extremely broad. Although Plaintiffs attempt to draw from of Paragraph 20 to limit the definition of "operations" to those directly related to actual drilling, the undersigned notes that the language of Paragraph 8 appears to include "the construction and use of roads" within the meaning of this term. (Doc. 6-2 ¶ 8). However, regardless of whether Paragraph 8 properly modifies the meaning of the word "operations," as it is used in Paragraph 12, it is clear that Defendants' alleged actions of clearing access roads, beginning tree removal between the Burke-2 and Burke-3 Wells, stacking trees along the roadway for the damages claim evaluation, and clearing, leveling and developing the well pad of the Burke-3 Well – all during the pendency of a permit application with the DEP – qualify as "work preparatory, incident or related" to the activities explicitly described in Paragraph 12.

However, Plaintiffs dispute that Defendant Sylvan engaged in the above acts prior to November 6, 2010, characterizing their work instead as much more cursory in nature, and,

5

implicitly, not performed with the intention of engaging in "operations" within the period of time allowed by the lease. While all parties submit photographs and affidavits which are purported to show the extent of the work performed by Defendant Sylvan, none of these – individually or in the aggregate – is sufficient to prove one side's case over the other under the summary judgment standard. Accordingly, this Court finds that there is a genuine issue of material fact with respect to the extent of the activities engaged in by Defendant Sylvan on the Burke property as of November 6, 2010. Furthermore, there remains doubt as to whether Plaintiffs' version of facts, if proven, would constitute "operations," even under the broad terms of the lease. Accordingly, Defendants' motions for summary judgment will be denied.

AND NOW, this 28th day of March, 2012,

IT IS HEREBY ORDERED that, for the reasons stated above, the motion for summary judgment filed by Defendant Sylvan (Doc. 48) is DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment filed by Defendant EQT (Doc. 52) is DENIED.

BY THE COURT:

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc (via CM/ECF):
All Counsel of Record